IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOSEPH TIGER D. PRINCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 118-011 |
| | ) | |
| ANTHONY KNIGHT and | ) | |
| LUCRETIA STROUD, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, commenced the above-captioned civil rights case *pro se*. Defendants' filed a pre-answer motion to dismiss, (doc. no. 29), which Plaintiff opposes, (doc. no. 37). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**.

**I.    BACKGROUND**

**A.    Procedural History**

The Clerk of Court opened this case in the Northern District of Georgia on September 8, 2017, and Plaintiff has paid the $400 filing fee. Because of pleading deficiencies, United States Magistrate Judge Russell G. Vineyard directed Plaintiff to file an amended complaint. (Doc. no. 2.) On October 30, 2017, Plaintiff submitted a first recast complaint which did not comply with Judge Vineyard's instructions and instead attempted to join unrelated claims

against at least sixteen individuals, concerning various events alleged to have occurred between November 4, 2013, and September 19, 2017.  (<u>See</u> doc. nos. 5, 6.)  Judge Vineyard gave Plaintiff a second opportunity to amend his complaint, and that second recast complaint is the operative pleading.  (Doc. no. 10.)  United States District Judge Thomas W. Thrash, Jr., dismissed one Defendant and transferred the case to the Southern District of Georgia because the five other Defendants were located in this District, and the events giving rise to Plaintiff's claims against them also occurred here.  (<u>See</u> doc. nos. 11, 13.)

Upon the case's arrival in this District on January 12, 2018, the Court screened the remaining claims in the second recast complaint.  (Doc. nos. 16, 17.)  Over Plaintiff's objections, Chief United States District Judge J. Randal Hall dismissed three of the five Defendants.  (Doc. nos. 20, 24.)  The only two Defendants who remain are Anthony Knight and Lucretia Stroud, correctional officers who are alleged to have mistreated Plaintiff on August 8, 2017, upon his return to ASMP after neck surgery.  (<u>See</u> doc. nos. 10, 19.)  Defendants Knight and Stroud move to dismiss, arguing Plaintiff failed to exhaust his administrative remedies prior to filing his complaint.  (<u>See</u> doc. no. 29-1.)  Plaintiff does not contest that he failed to exhaust his administrative remedies prior filing his complaint in the Northern District, but maintains that because his administrative remedies were exhausted by the time the case transferred to this District, his case should not be dismissed.[1]  (Doc. no. 37, pp. 55-65.)

---

[1]Plaintiff states he mistakenly named Lucretia Stroud as a Defendant and therefore agrees she should be dismissed.  (Doc. no. 37, p. 58.)  He now asserts he meant to name Sherita Gibbons as a Defendant.  (<u>Id.</u>)  The Court need not resolve this discrepancy regarding the correct name for Defendant Knight's co-Defendant because, as discussed herein, Plaintiff failed to exhaust his administrative remedies regarding the events of August 8, 2017, prior to filing his case in federal court, regardless of who he named as a Defendant.

**B.      Complaint Allegations**

With respect to Defendants Knight and Stroud, Plaintiff alleges the following facts in his second recast complaint.  On August 8, 2017, Plaintiff returned to ASMP after neck surgery.  (Doc. no. 10, p. 5.)  Defendant Stroud and a second, unknown correctional officer were responsible for escorting Plaintiff, and Defendant Stroud asked Plaintiff to sit in a wheelchair that had a puddle of rain water in the seat.  (Id.)  Plaintiff requested the seat be dried, but Defendant Stroud refused and told Defendant Knight that Plaintiff was refusing to exit the transport van.  (Id. at 6.)  Plaintiff and Defendant Knight exchanged words, and when Plaintiff attempted to exit the transport van, Defendant Knight slammed Plaintiff into the van's side window, aggravating the injuries for which he just had surgery.  (Id.)  Plaintiff seeks $500,000 from each Defendant, as well as non-specific punitive damages.  (Id. at 5.)  As to the issue of exhaustion of administrative remedies, Plaintiff states he presented the facts relating to his complaint under ASMP's grievance procedure and "appealed their denial to its highest forms."  (Id. at 2.)

Defendants produced the affidavit Shareka Browman, the Grievance Coordinator at ASMP.  (See doc. nos. 29-2 (Browman Aff.).)  The Grievance Coordinator's responsibilities include but are not limited to maintaining a log of all offender grievances and ensuring offenders receive grievance forms when requested, as well as ensuring grievance procedures are conducted in accordance with the Georgia Department of Corrections ("GDOC") Standard Operating Procedures ("SOP"). (Id. ¶ 4.)  The Grievance Coordinator identified two grievances Plaintiff filed with respect to the events of August 8, 2017.  (Id. ¶¶ 22-23.)

Specifically, Plaintiff filed Grievance Number 251697 on August 16, 2017, alleging that on August 8, 2017, "Officer Gibson demanded that he sit in a wheelchair with a puddle

3

of water in the seat and that Officer Knight/McKnight slammed him into the window of the transport van." (Id. ¶ 22 & Ex. D.)  The Warden denied the grievance on September 22, 2017, and Plaintiff signed for receipt of the response on September 24, 2017.  (Id., Ex. D, p. 2.)  Plaintiff appealed the denial on September 25, 2017, (id. at 2-3), and in a response dated December 4, 2017, the Central Office Appeal stated, "Due to the nature of your allegation, this incident is currently under investigation by the Criminal Investigation Division for review and any action deemed necessary."  (Id. at 1; see also doc. no. 37, Ex. 46.)

On August 18, 2017, Plaintiff filed Grievance Number 251708, alleging, among other things, that on August 8, 2017, Defendant Knight assaulted him based on incorrect information that Plaintiff was refusing to exit the transport van.  (Browman Aff., Ex. E, pp. 4-5.)  The Warden rejected the grievance on September 22, 2017, because "the allegations [are] already being addressed in grievance dated 8-16-2017."  (Id. at 2.)  As discussed above, the August 16th grievance is Grievance Number 251697.  Plaintiff appealed the Warden's response to Grievance Number 251708, and in a response dated November 28, 2017, the Central Office rejected the appeal because Plaintiff failed to follow the proper grievance procedure when he raised more than one issue in his grievance.  (Id. at 1.)

## II.   DEFENDANTS' MOTION TO DISMISS SHOULD BE GRANTED BECAUSE PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES PRIOR TO FILING THIS LAWSUIT.

### A.   The Legal Framework

Where, as here, a defendant has filed a motion to dismiss a claim based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.  First, the court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the

4

complaint is subject to dismissal for failure to exhaust administrative remedies, the defendant's motion will be granted.  Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted)).  If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with the defendant bearing the burden of proving that Plaintiff has failed to exhaust his administrative remedies.  Id.  Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted.  Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  In the Eleventh Circuit, "brought" as used in this section of the PLRA means "the filing or commencement of a lawsuit, not . . . its continuation."  Harris v. Garner, 261 F.3d 970, 974 (11th Cir. 2000) (*en banc*); see also Goebert v. Lee Cty., 510 F.3d 1312, 1324 (11th Cir. 2007) ("The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied.").  Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to

complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  "The filing of a civil suit without properly exhausting all available administrative remedies is a procedural misstep that is fatal to the underlying case." McKeithen v. Jackson, 606 F. App'x 937, 939 (11th Cir. 2015) (*per curiam*) (citing Johnson v. Meadows, 418 F.3d 1152, 1158-59 (11th Cir. 2005)).

The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).  Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.  See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*) (citing Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  Under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"  Johnson, 418 F.3d at 1155, 1156.

Furthermore, the PLRA also "requires proper exhaustion."  Woodford v. Ngo, 548 U.S. 81, 93 (2006).  In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way.  Id. at 90 (internal quotation omitted).  If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he does not satisfy the exhaustion requirement.  Johnson, 418 F.3d at 1159.

**B.      The Administrative Grievance Procedure**

Based on the date of the alleged incident, the administrative grievance procedure applicable in this case is the version of the GDOC's Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015.   (Browman Aff., Ex. A.)   The administrative remedies procedure commences with the filing of the Original Grievance, and the inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to sign the Original Grievance and give it to a Counselor.   Id. § VI(D)(1)-(4).   "The complaint on the Grievance Form must be a single issue/incident."   Id. § VI(D)(2).   Once the Counselor gives the grievance to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it.   Id. § VI(D)(3), (5)(a).   If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office.   Id. § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation to reject the grievance, the Grievance Coordinator will appoint a staff member to investigate the complaint.   Id. § VI(D)(6).   After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden.   Id. The Warden or a designee reviews the grievance, the report, and the recommendation and issues a decision in writing.   Id.   The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision, but a onetime ten calendar day extension may be granted.   Id. § VI(D)(7).

The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner, but this time limit may be waived for good cause.   Id. § VI(E)(2).   If the Original Grievance is rejected, or if the time

allowed for a response to the Original Grievance has expired without action, the offender may file a Central Office Appeal.  Id. §§ VI(E)(3)-(4).  The Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to deliver a decision to the offender, at which time the grievance procedure is complete.  Id. § VI(E)(7).

### C.    Plaintiff's Failure to Exhaust

Plaintiff signed the original complaint on September 1, 2017, and it was filed in the Northern District of Georgia on September 8, 2017.  (Doc. no. 1, pp. 1, 32.)  Plaintiff's grievance history establishes he filed two grievances related to the events of August 8, 2017. He filed Grievance Number 251697 on August 16, 2017, and Grievance Number 251708 on August 18, 2017.  (Browman Aff., ¶¶ 22-23 & Ex. C.)  The Warden denied both grievances on September 22, 2017, two weeks after Plaintiff's case opened in the Northern District of Georgia.  (Id.; doc. no. 1.)  Plaintiff does not dispute these are the two grievances he filed concerning the events of August 8, 2017, or that he filed his original complaint in the Northern District of Georgia before the grievance procedure was complete with respect to these two grievances.  (Doc. no. 37, pp. 54, 57, 64.)

As to Grievance Number 251708, the Central Office issued its ruling on November 28, 2017.  (Browman Aff. ¶ 23 & Ex. E.)  Not only was this grievance rejected by the Central Office after commencement of the lawsuit, but it was rejected because Plaintiff did not follow the proper procedure for filing a grievance.  Specifically, the Central Office refused to address the grievance because, in violation of the single issue/incident requirement, Grievance Number 251708 raised at least five issues.  (Id., Ex. E.)  The exhaustion requirement is not satisfied if a prisoner fails to complete the administrative process or falls short of compliance with procedural rules.  Johnson, 418 F.3d at 1159.

8

The Supreme Court has explained the rationale behind requiring "proper exhaustion" as follows:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules.  A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . .  For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time.  If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court.  And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Woodford, 548 U.S. at 95; see also Johnson, 418 F.3d at 1159 (allowing an untimely grievance to satisfy exhaustion requirement would defeat aims of PLRA to review the merits of a prisoner's claim, does "not spur the corrective action that might have obviated the need for litigation, . . . filter  . . . potential frivolous claims, . . .[or] develop[] . . . an administrative record to assist the courts in deciding the controversy").   Therefore, despite Plaintiff's disagreement that he violated the single issue/incident rule as to Grievance Number 251708, (doc. no. 37, p. 57), the Court finds that this procedurally improper grievance, even if exhausted through the grievance procedure prior to commencing this lawsuit, would not have satisfied the PLRA's exhaustion requirement.

Thus, the Court turns to Grievance Number 251697 and the crux of Plaintiff's opposition to the motion to dismiss.  Namely, Plaintiff claims that because the lawsuit did not arrive in the Southern District of Georgia until January 12, 2018, and Defendants Knight and Stroud were not served until March 27, 2018, and the Central Office ruled on his appeal

on December 4, 2017, the motion to dismiss should be denied.  (Doc. no. 37, pp. 57, 64.)
This argument fails.

"The time the statute sets for determining whether exhausting of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied."  Goebert, 510 F.3d at 1324.  Plaintiff "brought" this legal action when he filed his original complaint, bearing a signature date of September 1, 2017, in the Northern District of Georgia.[2]  See Harris, 216 F.3d at 974.  Under the "prison mailbox rule," Plaintiff's complaint is deemed filed when delivered to prison officials for mailing, and the signature date is assumed to be the day of delivery to prison officials.  See Houston v. Lack, 487 U.S. 266, 275-76 (1988).  Even using the date the Clerk of Court opened a case on the docket on September 8, 2017, makes no difference to the analysis, because any filing date prior to when the Central Office denied the appeal of Grievance Number 251697 in December of 2017 means Plaintiff failed to exhaust his administrative remedies as required by the PLRA.

As the presiding District Judge in this case recently ruled, "[B]ecause 'the only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint,' the subsequent issuance of the Appeal Decision after the initiation of this case 'cannot cure the exhaustion defect.'"  Mack v. Miles, CV 117-061, doc. no. 19, pp. 5-6 (S.D. Ga. Apr. 26, 2018) (Hall, C.J.) (citing Harris, 216 F.3d at 981 and Smith, 491 F. App'x at 83).  Moreover, amending a complaint or transferring a case cannot cure the exhaustion defect because such actions do "not change the

---

[2]Plaintiff assigns an even earlier filing date, "On July 17, 2017, I filed the instant civil action within the Northern District of Georgia."  (Doc. no. 37, p. 54.)

important historical fact:  [Plaintiff's] administrative remedies were unexhausted when he filed his original complaint."  <u>Smith</u>, 491 F. App'x at 83.  Because Plaintiff did not exhaust his administrative remedies with respect to his claims against these two Defendants prior to initiating this lawsuit, the motion to dismiss should be granted.  <u>Leal v. Ga. Dep't of Corr.</u>, 254 F.3d 1276, 1279 (11th Cir. 2001) (*per curiam*) ("'[U]ntil such administrative remedies as are available are exhausted,' a prisoner is precluded from filing suit in federal court.") (citations omitted); <u>Higginbottom</u>, 223 F.3d at 1261.

III.   **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED**, (doc. no. 29), and this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 28th day of June, 2018, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA